UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X

SUKINA SAUNDERS,

             Plaintiff,

     − against –                    **MEMORANDUM & ORDER**

QUEENSBOROUGH COMMUNITY        13 CV 5617 (PKC) (RML)
COLLEGE; CAROL CAMPBELL;
VICTOR BIFANI; MAVIS HALL;
and ELLEN ADAMS,

             Defendants.
-------------------------------------------------------X

PAMELA K. CHEN, United States District Judge:

*Pro se* Plaintiff Sukina Saunders ("Plaintiff") filed this action on October 10, 2013 against her employer Queensborough Community College ("QCC") and her supervisors at QCC (collectively, "Defendants"). (Dkt. 1 ("Complaint" or "Compl.").) Plaintiff brings claims pursuant to the Americans with Disabilities Act ("ADA"), asserting that Defendants subjected her to a hostile work environment, failed to timely respond to her requests for reasonable accommodations, retaliated against her, and denied her promotions. Plaintiff also asserts a gender-based wage discrimination claim pursuant to the Equal Pay Act ("EPA"). Defendants move to dismiss Plaintiff's Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") for failure to state a claim. (Dkt. 12.) For the reasons set forth below, Defendants' motion is granted, except that Plaintiff will be permitted forty-five (45) days to seek leave to amend her ADA hostile work environment claim against QCC.

*BACKGROUND*

The following facts are taken from Plaintiff's Complaint and exhibits, her oral supplementation of her claims at the May 29, 2014 conference with the Court (Dkt. 14−1 ("Tr.")), as well as her opposition to Defendants' motion (Dkt. 15 ("Opp.")). The Court accepts these facts as true and construes them liberally in Plaintiff's favor as a *pro se* non-moving party. *See Bell Atl. Corp. v. Twombly* ("*Twombly*"), 550 U.S. 544, 555–56 (2007); *Weixel v. Bd. of Educ. of New York*, 287 F.3d 138, 145–46 (2d Cir. 2002) (quoting *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000)).

Plaintiff is currently employed full-time in QCC's Bursar's Office as a CUNY Office Assistant Level 3. (Compl. at 12, 16, 29[1]; Tr. 26.) Plaintiff began working at the Bursar's Office in 1993, initially as a part-time employee, and became a full-time employee in 1999. (Tr. 26.) Plaintiff has been a CUNY Office Assistant Level 3 since 2002. (Compl. at 7 ¶ 16.) At all times relevant to this action, Defendant Carol Campbell ("Campbell") was Plaintiff's immediate supervisor, Defendant Victor Bifani ("Bifani") was the Director of the Bursar's Office, Defendant Ellen Adams ("Adams") was the Personnel Director at QCC, and Defendant Mavis Hall ("Hall") was the Affirmative Action Compliance Officer at QCC. (Compl. at 7 ¶¶ 4, 6–7, 14.)

On August 14, 2012, Plaintiff filed a charge of disability-related discrimination with the United States Equal Employment Opportunity Commission ("EEOC"). She was provided with a right to sue letter dated July 25, 2013. (*Id.* at 4 ¶ 10, 5 ¶ 12.)

Plaintiff suffers from multiple sclerosis. (*Id.* at 13, 17.) On or about October 25, 2012, Plaintiff submitted a formal request to QCC for three "reasonable accommodations" under the

---

[1] Citations refer to the pagination assigned by the ECF system, not the document's internal pagination.

ADA: (1) adjustment of Plaintiff's schedule to allow her to start work each day later to avoid travelling during rush hour and allow for delays in her shared transportation; (2) two 15-minute work breaks during the day; and (3) a climate-controlled work space to avoid excessive heat. (*Id.* at 7 ¶ 1, 10−17; Tr. 5−6, 10.) Plaintiff submitted letters from her medical providers in support of these requests, and communicated about them with both Hall and Adams while the requests were pending. (Compl. at 7 ¶¶ 4, 6; 10−11, 19−20.) In April and May 2013, Plaintiff corresponded with Adams regarding the status of her requests. (*Id.* at 19.) In one email, Plaintiff confirmed that Adams would contact Plaintiff's medical provider "regarding additional clarity about [her] reasonable accommodation for the fourth time." (*Id.*)

By letter dated May 23, 2013 from Adams, QCC offered Plaintiff accommodations in the form of two 15-minute breaks and a climate-controlled environment. (*Id.* at 8; Tr. 6−7.) Plaintiff claims that the seven-month delay in approving her requests was unreasonable and suggests discriminatory intent, as well as intent to retaliate against Plaintiff for having filed an EEOC charge in August 2012. (Compl. at 7 ¶ 2; Tr. 11−14.)

Although the May 23, 2013 letter did not address Plaintiff's request for a travel accommodation (Compl. at 7 ¶ 3, 8), Plaintiff acknowledges that sometime in February 2008, Campbell verbally agreed to allow Plaintiff to begin work later to accommodate Plaintiff's travel needs (*id.* at 7 ¶ 8; Tr. 6−9). However, Plaintiff asserts that Campbell created a hostile work environment because of Plaintiff's modified schedule. Campbell made unprofessional snide remarks about Plaintiff's late arrival, and publicly humiliated her in the office. (Compl. at 7 ¶¶ 12−13; Opp. at 1.) On May 22, 2009, Campbell "verbally attacked [Plaintiff's] disability" when Plaintiff sought a break, telling Plaintiff "What is the problem!" and "We do not need this." (Compl. at 7 ¶ 8, 21−22.) On January 13, 2011, Campbell told Plaintiff to "just die" in the

presence of coworkers. (*Id.* at 7 ¶ 14, 24−26.) Soon thereafter, Plaintiff reported Campbell's behavior to Bifano, who failed to take action. (*Id.*)

Plaintiff further claims that she became a target for harassment by co-workers because Campbell did not appropriately address the concerns of other workers regarding Plaintiff's travel accommodation. (*Id.* at 7 ¶ 10.) Plaintiff asserts that Campbell's hostility continued after January 2011 because Campbell "turned on [her]", and engaged in "unprofessional conduct in the office with other co-workers" about Plaintiff arriving late to work, which caused Plaintiff to feel humiliated and ridiculed. (Tr. 4−5, 8.) Further, Campbell labeled Plaintiff as an "undue stressor" to the office in her performance evaluation dated May 2, 2012. Plaintiff claims that Campbell included this notation in retaliation for Plaintiff's complaints about Campbell's unprofessional conduct to Bifano. (Compl. at 7 ¶ 12; Tr. 4, 7−8.)

Plaintiff also claims that Defendants passed her over for a level increase from Level 3 to Level 4 in 2008 and 2009, which would have resulted in a higher salary. (Compl. at 7 ¶¶ 18, 20.) Plaintiff first requested to be promoted to a Level 4 in 2004 by email to Bifani. (*Id.* at 7 ¶ 18.) In 2008, Defendants recommended Plaintiff for the promotion, but omitted pertinent information in her application that Plaintiff claims would have better positioned her against other candidates. (Tr. 15, 17–18.) For instance, Defendants failed to include a 2007 "desk audit" that detailed Plaintiff's job responsibilities. (Compl. at 7 ¶ 19; Tr. 18−19.) Campbell's 2008 promotion recommendation letter also failed to describe key qualities of Plaintiff's work. (Compl. at 7 ¶ 20; Tr. 19.)[2] Because of how her application was presented and Campbell's negative evaluation, Plaintiff was not promoted. Plaintiff asserts that Defendants' failure to promote her in 2008

---

[2] Plaintiff claims that, in Defendants' rebuttal submission to the EEOC, Campbell altered her evaluation of Plaintiff to be more positive, "in an attempt to hide [Campbell's] actions." (Compl. at 7 ¶ 21; Tr. 19–20.)

resulted in her inability to be promoted thereafter because, with the 2008 promotion, the Bursars Office had reached the maximum allowable number of level 4 positions for that office. (Tr. 15−17.)

Finally, Plaintiff claims that she is paid about $20,000 less annually than three other male employees who worked in her office as "Bursar Coordinators." (Compl. at 7 ¶ 15; Tr. 20−24.) Plaintiff claims that she performs "75 percent of the same w[o]rk in the office" as Bursar Coordinators, including billing, collection, "counsel[ing] students" and "adjust[ing] accounts." (Compl. at 7 ¶ 15; Tr. 21–22.) The only difference is that Bursar Coordinators are given access to the vault containing the office's cash. (Tr. 21−22.)[3] At the time the Complaint was filed, Plaintiff was pursuing a college degree. (Tr. 24.) Each of the three male Bursar Coordinators had college degrees; one had a master's degree, and another was pursuing a master's. (Tr. 23−24.) One of the male Bursar Coordinators was an Office Assistant before being "promoted" to the Bursar Coordinator position. (Tr. 23.)

## DISCUSSION

### I. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A court must accept all factual allegations in the complaint as true, and draw all reasonable inferences in

---

[3] Defendants' motion relies in part on exhibits submitted in connection with the motion, but not referenced within the pleadings. For example, Defendants submit CUNY's promotion procedures, copies of the Bursar's Office recommendation of Plaintiff for a promotion, and job descriptions. However, because these exhibits are not referenced within the Complaint, the Court may not consider them without converting the instant motion into a motion for summary judgment. *Cf. Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) ("[A] plaintiff's reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough."). The Court declines to do so, and does not consider Defendants' exhibits in deciding this motion.

favor of the plaintiff. *Id.* at 555–56. A court is "not bound to accept as true a legal conclusion couched as a factual allegation," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A complaint should be dismissed where a plaintiff has not "nudged [her] claims across the line from conceivable to plausible." *Id.* at 570.

*Pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). "When considering motions to dismiss a pro se complaint such as this, 'courts must construe [the complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggest[s].'" *Weixel*, 287 F.3d at 145–46 (quoting *Cruz*, 202 F.3d at 597); *see Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) ("Even after *Twombly*, [courts] remain obligated to construe a *pro se* complaint liberally."). Nevertheless, "*pro se* status 'does not exempt a party from compliance with relevant rules of procedural and substantive law.'" *Iwachiw v. N.Y.C. Bd. of Educ.*, 194 F. Supp. 2d 194, 202 (E.D.N.Y. 2002) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

## II. ADA Claims Against Individual Defendants

At the outset, the Court notes that the ADA does not create liability for individual defendants sued in their personal capacities for employment discrimination. *See Spiegel v. Schulmann*, 604 F.3d 72, 79−80 (2d Cir. 2010); *Forgione v. City of New York*, 11 CV 5248, 2012 WL 4049832, at *4 (E.D.N.Y. Sept. 13, 2012). Defendants are thus correct that Plaintiff's ADA claims against Campbell, Bifani, Hall, and Adams in their personal capacities must be dismissed. Insofar as the Complaint asserts claims against these defendants in their official capacities, such

claims are functionally identical to claims against QCC, and the Court hereinafter considers such claims simply as claims against QCC. *Forgione*, 2012 WL 4049832, at *4.

### III. Timeliness

Plaintiffs asserting ADA claims must exhaust all available administrative remedies, *J.C. v. Reg'l Sch. Dist. 10, Bd. of Educ.*, 278 F.3d 119, 124 (2d Cir. 2002), and must file an EEOC charge within 300 days of the alleged discriminatory conduct, *see, e.g.*, 42 U.S.C. § 2000e-5(e)(1); *Tewksbury v. Ottaway Newspapers*, 192 F.3d 322, 325 (2d Cir. 1999). Here, Plaintiff filed her filed her EEOC charge on August 14, 2012. Thus, any alleged discriminatory acts that occurred before October 19, 2011—300 days before her EEOC filing—cannot form the basis of Plaintiff's ADA claims.

Failures to promote and negative performance evaluations are discrete acts, and "[e]ach incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002) (superseded in part by statute, *Lilly Ledbetter Fair Pay Act,* Pub. L. No. 111–2, 123 Stat. 5 (2009)); *Almontaser v. N.Y.C. Dep't of Educ.*, 13 CV 5621, 2014 WL 3110019, at *4 (E.D.N.Y. July 8, 2014); *Edwards v. N.Y. Unified Court Sys.*, 12 CV 46, 2012 WL 6101984, at *3 (S.D.N.Y. Nov. 20, 2012). Discrete acts "which fall outside the limitations period[] cannot be brought within it, even when undertaken pursuant to a general policy that results in other discrete acts occurring within the limitations period." *Chin v. Port Auth. of N.Y. & N.Y.*, 685 F.3d 135, 157 (2d Cir. 2012); *Almontaser*, 2014 WL 3110019, at *4–5. Thus, recovery is precluded for discrete acts occur outside of the statutory time period. *Flores v. N.Y.C. Human Res. Admin*, 10 CV 2407, 2011 WL 3611340, at *3 (S.D.N.Y. Aug. 16, 2011).

Plaintiff's Complaint asserts that Defendants failed to promote her in 2004 and 2008. Plaintiff also alleges that she was denied the promotion in 2008 because Defendants omitted a desk audit that fully described Plaintiff's duties, and included an incomplete recommendation from Campbell that failed to describe key aspects of Plaintiff's work. (Compl. at 7 ¶¶ 18−20; Tr. 14−15, 18; Opp. at 10.) As Plaintiff's failure to promote claims with respect to these discrete actions arose well before October 19, 2011, these claims are time-barred. Similarly, any retaliation claim based on the 2008 evaluation is also time-barred. Plaintiff's suggestion that Defendants' failure to promote her in 2008 prevented her from being promoted in 2012[4] does not alter this conclusion, because failures to promote are discrete acts, and Plaintiff is thus precluded from relying on a "continuous violation" theory. *Edwards,* 2012 WL 6101984, at *3.[5]

## IV. Hostile Work Environment

A hostile work environment claim requires that the workplace be "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S.

---

[4] (*See* Tr. 15−17 (noting that 2008 promotions resulted in the Bursar Office maximizing all Level 4 positions available, rendering the office ineligible for new promotions in 2012).)

[5] Although the Court does not understand Plaintiff to assert a claim that Defendants failed to promote her in 2012, the Court observes that the allegations do not support any such claim. To state a claim for a discriminatory failure to promote, a plaintiff must plead sufficient facts to suggest that: "(1) she is a member of a protected class; (2) she 'applied and was qualified for a job for which the employer was seeking applicants'; (3) she was rejected for the position; and (4) the position remained open and the employer continued to seek applicants having the plaintiff's qualifications." *Petrosino v. Bell Atl.*, 385 F.3d 210, 226 (2d Cir. 2004) (quoting *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 709 (2d Cir. 1998)). Acknowledging that the Bursar's Office could not promote anyone to a Level 4 position in 2012 (Tr. 15−17), Plaintiff has failed to allege that she applied for a job in 2012 for which Defendants were seeking applicants. *See Paul v. Postgraduate Ctr. for Mental Health*, 12 CV 362, 2015 WL 1508316, at * 20 (E.D.N.Y. Mar. 31, 2015) (no discriminatory inference could be drawn from the failure to promote because the complaint did not allege that a promotion was available) (citing cases).

57, 65, 67 (1986)) (internal citations and quotation marks omitted). Assuming that a hostile work environment claim is available under the ADA,[6] Plaintiff "must plead facts that would tend to show that the complained of conduct: (1) is objectively severe or pervasive—that is, . . . creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's [disability]." *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (quoting *Gregory v. Daly*, 243 F.3d 687, 691–92 (2d Cir. 2001)) (internal quotation marks omitted).

"[T]he standard for establishing a hostile work environment is high." *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003). The inquiry demands an examination of "all the circumstances" including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23. "Isolated incidents typically do not rise to the level of a hostile work environment unless they are of sufficient severity to alter the terms and conditions of employment[.]" *Demoret v. Zegarelli,* 451 F.3d 140, 149 (2d Cir. 2006) (quoting *Patterson v. Cnty. of Oneida,* 375 F.3d 206, 227 (2d Cir. 2004)). "As a general rule, incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Alfano v. Costello,* 294 F.3d 365, 374 (2d Cir. 2002) (internal quotation marks omitted).

---

[6] While the Second Circuit has not explicitly recognized a hostile work environment claim pursuant to the ADA, *see Adams v. Festival Fun Parks, L.L.C.*, 560 Fed. App'x. 47, 51 n.4 (2d Cir. 2014), many district courts in this Circuit have recognized such a claim, *see, e.g.*, *Acheampong v. N.Y.C. Health & Hosps. Corp.*, 11 CV 9205, 2015 WL 1333242, at *13 (S.D.N.Y. Mar. 25, 2015); *Hong Yin v. N. Shore LIJ Health Sys.*, 20 F. Supp. 3d 359, 370 12 CV 1499, 2014 WL 2027305 (E.D.N.Y. 2014); *Wesley-Dickson v. Warwick Valley Cent. Sch. Dist.,* 973 F. Supp. 2d 386, 405 (S.D.N.Y. 2013); *Forgione,* 2012 WL 4049832, at *7, n.6.

The workplace indignities that Plaintiff alleges fail to meet this high standard. Plaintiff bases her hostile work environment claim on two incidents over a span of two years in which Campbell made offensive remarks that arguably related to Plaintiff's disability. The first incident occurred on May 22, 2009, when Campbell told Plaintiff in a humiliating tone, "What is the problem!" and "We do not need this.", when Plaintiff sought a break. The other incident took place on January 13, 2011, when Campbell told Plaintiff to "just die" in the presence of her co-workers. (Compl. at 7 ¶¶ 8, 14; 21, 25; Tr. 4.)[7] The Court accepts that Campbell's comments caused Plaintiff to feel humiliated and belittled. (Tr. 4, 8; *see* Compl. at 7 ¶ 13.) As a matter of law, however, these incidents were too infrequent and isolated to constitute a hostile work environment. *See e.g.*, *Kelly v. N. Shore–Long Island Health Sys.*, 13 CV 1284, 2014 WL 2863020, at *9 (E.D.N.Y June 22, 2014) (dismissing hostile work environment claim based on three incidents over the course of over one month); *Sosa v. Medstaff, Inc.*, 12 CV 8926, 2013 WL 6569913, at *6–7 (S.D.N.Y. Dec. 13, 2013) (finding that two comments did not qualify as pervasive to give rise to hostile environment); *Ardigo v. J. Cristopher Capital, LLC*, 12 CV 3627, 2013 WL 1195117, at *4–5 (S.D.N.Y. Mar. 25, 2013) (dismissing claim based on offensive statements made on three occasions); *Rios v. Buffalo & Fort Erie Pub. Bridge Auth.*, 04 CV 375A, 2008 WL 657121, at *3 (W.D.N.Y. Mar. 7, 2008) (finding that conduct was "simply too infrequent and episodic to constitute a hostile work environment" where plaintiff identified "only about six specific instances of misconduct over a thirteen-year period of time"

---

[7] Because Plaintiff alleges that this conduct is ongoing, both the conduct before and after the statutory time period may be considered in Plaintiff's hostile work environment claim. *Morgan*, 536 U.S. at 105 ("[C]onsideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period."); *Almontaser*, 2014 WL 3110019, at *7 (300-day statute of limitations does not apply to hostile work environment claims).

and "the incidents consisted primarily of isolated offensive remarks, jokes and cartoons"); *Trotta v. Mobil Oil Corp.*, 788 F. Supp. 1336, 1350 (S.D.N.Y. 1992) (eleven incidents over the course of more than seven years too infrequent to create hostile work environment). Campbell's statements, standing alone, also were not "sufficiently severe to overcome [the] lack of pervasiveness." *Mormol v. Costco Wholesale Corp.*, 364 F.3d 54, 59 (2d Cir. 2004); *see Clarke v. InterContinental Hotels Grp, PLC*, 12 CV 2671, 2013 WL 2358596, at *10 (S.D.N.Y May 30, 2013) (allegations that supervisor spoke rudely to plaintiff and excessively scrutinized her work did not amount to a hostile work environment).

Plaintiff's other hostile workplace allegations—that Campbell "ignited the office with her unprofessional snide remarks" (Compl. at 7 ¶ 12; *see* Opp. at 11), "publicly humiliated" Plaintiff (Compl. at 7 ¶ 13), made Plaintiff "the target of ongoing harassment" (*id.* at 7 ¶ 11; Opp. at 1), "constantly put [Plaintiff] on the spotlight" (Opp. at 1), and "turned on" Plaintiff after January 2011 and engaged in "unprofessional conduct in the office with other co-workers" (Tr. 4, 8)—are too vague and conclusory to support a hostile work environment claim. *Hong Yin*, 20 F. Supp. 3d at 370–71 (allegations that plaintiff was harassed and berated were too vague and conclusory to plead a hostile work environment); *Forgione*, 2012 WL 4049832, at *7–8 (allegations that superior was distant and hostile, and threatened plaintiff were insufficient to sustain a hostile work environment claim). Without more information about what the allegedly harassing and unprofessional comments and conduct consisted of, and how Campbell and Plaintiff's co-workers demonstrated hostility, the Court cannot find that the behavior Plaintiff alleges was sufficiently severe to amount to a hostile work environment. Furthermore, Campbell's notation that Plaintiff was an "undue stressor" on the office in Plaintiff's May 2012 performance evaluation is insufficient to warrant relief under a hostile environment theory. *See Hong Yin*, 20

F. Supp. 3d at 370 (negative feedback insufficient as a matter of law to support a hostile work environment claim); *Salerno v. Town of Bedford, NY*, 05 CV 7293, 2008 WL 5101185, at *8 (S.D.N.Y. Dec. 3 2008) ("Allegations of negative job evaluations or excessive reprimands are insufficient to establish a hostile environment claim.")

In sum, Plaintiff's allegations, viewed in their totality, are insufficiently severe or pervasive to state a plausible hostile work environment claim. Accordingly, Plaintiff's ADA hostile work environment claim is dismissed.

## V. Reasonable Accommodations

"The ADA provides that 'no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.'" *Ayyad-Ramallo v. Marine Terrace Assocs., LLC*, 13 CV 7038, 2014 WL 2993448, at *5 n.9 (E.D.N.Y. July 2, 2014) (quoting 42 U.S.C. § 12132). A defendant may violate the ADA by "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." *McBride v. BIC Consumer Prods. Mfg. Co.,* 583 F.3d 92, 96 (2d Cir. 2009) (quoting 42 U.S.C. § 12112(b)(5)(A)). To state a reasonable accommodation claim under the ADA, Plaintiff must plead sufficient facts to infer that (1) she is an individual with a disability as defined by the ADA, (2) QCC had notice of her disability, (3) she could perform the essential functions of her job with reasonable accommodation, and (4) QCC failed to make such accommodations. *See Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 216 (2d Cir. 2001); *Forgione*, 2012 WL 4049832, at *8.

Here, Plaintiff admits that Defendants provided all three accommodations that she requested. (Compl. at 7 ¶¶ 2, 6−8; Tr. 6–9; Opp. at 10.) The Court accordingly construes

Plaintiff's reasonable accommodation claim to be based on the seven-month delay in providing her accommodations. (Compl. at 7 ¶ 1; *see* Opp. at 1, 11.) To prevail on the claim that Defendants' failure to timely accommodate Plaintiff violated the ADA, Plaintiff must plead sufficient facts to raise the inference "that the failure 'was motivated by discriminatory intent.'" *Lyman v. City of New York*, 01 CV 3789, 2003 WL 22171518, at *6 (S.D.N.Y. Sept. 19, 2003) (quoting *Powers v. Polygram Holding, Inc.*, 40 F. Supp. 2d 195, 202 (S.D.N.Y.1999)); *see Logan v. Matveevskii*, 57 F. Supp. 3d 234, 258 (S.D.N.Y. 2014) ("[P]laintiff is required to provide evidence that the delay was motivated by the employer's discriminatory intent, as opposed to mere negligence."); *Hamedl v. Weiland*, 10 CV 2738, 2012 WL 3903499, at *7 (E.D.N.Y. Sept. 6, 2012); *De La Rosa v. City of New York Police Dep't.,* 09 CV 5290, 2010 WL 4177626, at *9 (S.D.N.Y. Oct. 22, 2010); *Manessis v. N.Y.C. Dep't. of Transp.*, 02 CV 359, 2003 WL 289969, at *17 (S.D.N.Y. Feb. 10, 2003).[8]

The Court has construed Plaintiff's pleadings liberally, cognizant of the fact that intent is difficult to show at this early stage of the litigation. *See Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 87 (2d Cir. 1996). Even liberally construed, however, there is nothing in Plaintiff's Complaint to suggest that the seven-month delay she experienced was motivated by discriminatory intent, bad faith, or obstructionism. *See Powers*, 40 F. Supp. 2d at 202. Plaintiff

---

[8] Some courts have construed similar allegations as a claim that a defendant constructively denied an employee's request for accommodation through delay. *See Clark v. Jewish Childcare Ass'n, Inc.*, 12 CV 9372, 2015 WL 1452134, at *17 (S.D.N.Y. Mar. 31, 2015) (construing allegation that defendant disputed disability for five weeks before accommodating her as claim for constructive denial through delay). Such claims are viable even if the employer ultimately grants the accommodation request. *Logan*, 57 F. Supp. 3d at 266. To prevail on constructive denial claims, however, courts have similarly required that the delay be motivated by discriminatory intent rather than "mere bureaucratic incompetence" or negligence. *Id.* at 271; *see Clark*, 2015 WL 1452134, at *17. As discussed herein, Plaintiff has failed to tie her delay to any discriminatory intent on the part of Defendants. Plaintiff therefore is unable to state a violation of the ADA based on delay under a constructive denial theory.

asserts only that the length of time to respond to her request suggests unreasonableness, particularly because Adams had 20 years' experience in human resources and should not have needed four opportunities to clarify the request. (Compl. at 19; Tr. 14; Opp. at 1.) The length of the delay alone does not raise an inference of discriminatory intent under the circumstances of this case. *See Logan*, 57 F. Supp. 3d at 271. Although Plaintiff faults Adams for contacting her medical provider multiple times to clarify what Plaintiff viewed to be a "simple" request (Opp. at 11; Tr. 14), it is generally expected under the ADA that "[a]n employee's request for reasonable accommodation requires a great deal of communication between the employee and employer." *Powers*, 40 F. Supp. 2d at 203. Indeed, Plaintiff's Complaint attaches emails that indicate an ongoing dialogue between Adams, Plaintiff, and Plaintiff's medical provider regarding Plaintiff's requests. (*See* Compl. at 19.)[9] At best, Plaintiff's allegations may suggest negligence or incompetence, but they are insufficient to plead an inference of discriminatory intent.

Hence, as Plaintiff has not plausibly alleged that Defendants failed to provide her with reasonable accommodations, or that any delay in providing those accommodations was motivated by discriminatory intent, dismissal with respect to Plaintiff's reasonable accommodations claim is granted.[10]

---

[9] Since there are no allegations that Campbell had any role in approving the formal reasonable accommodation request, Plaintiff cannot rely on Campbell's 2009 and 2011 remarks as a basis for inferring a discriminatory motivation in delaying her 2012 accommodation request.

[10] Plaintiff also contends that Defendants delayed approval of her reasonable accommodation requests in retaliation for her filing of an EEOC charge. (Tr. 11–13; Opp. at 1.) This claim also fails because Plaintiff does not sufficiently allege causation. Plaintiff's conclusory allegations of retaliatory delay state only that Defendants "failed to expedite" her request and that the reason for the "prolonged response time" was "not clear." (Compl. at 7 ¶ 2; Opp. at 1.) The only potentially nonconclusory connection that may be inferred from the pleadings is that QCC offered Plaintiff accommodations only 7 days before it submitted its response to Plaintiff's EEOC charge on May 30, 2013. (Tr. 12–13; Opp. at 1.) This speculative allegation is insufficient as a matter of law to raise an inference of retaliatory intent.

## VI. Retaliation Claims

The ADA makes it unlawful for an employer to "discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the [ADA]." 42 U.S.C. § 12203(a). To state an ADA retaliation claim, a plaintiff must plead facts that would tend to show that "'(1) she engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and the adverse action.'" *Kelly v. Howard I. Shapiro & Assocs. Consulting Engineers.*, 716 F.3d 10, 14 (2d Cir. 2013) (quoting *Lore v. City of Syracuse*, 670 F.3d 127, 157 (2d Cir. 2012)); *Forgione*, 2012 WL 4049832, at *10. "To plead a plausible claim of retaliation on a motion to dismiss, . . . [a] plaintiff need only allege facts that could establish a causal nexus between a protected activity and the adverse employment action." *Pahuja v. Am. Univ. of Antigua*, 11 CV 4607, 2012 WL 6592116, at *11 (S.D.N.Y. Dec. 18, 2012) (citing *Dorsey v. Fisher*, 468 Fed. App'x. 25, 27 (2d Cir. 2012) (summary order)).

Defendants challenge the sufficiency of Plaintiff's allegations that she suffered an adverse action. (Dkt. 13 at 6.) An ADA plaintiff suffers an adverse employment action when "he or she endures a 'materially adverse change' in the terms and conditions of employment." *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (quoting *Richardson v. N.Y. Dep't of Corr. Servs.*, 180 F.3d 426, 446 (2d Cir. 1999)). A materially adverse change is a change in working conditions that is "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Galabya*, 202 F.3d at 640 (quoting *Crady v. Liberty Nat'l Bank & Trust Co. of Ind.*, 993 F.2d 132, 136 (7th Cir. 1993)) (internal quotation marks omitted). "Examples of

15

materially adverse employment actions include 'termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [and] significantly diminished material responsibilities[.]'" *Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004) (quoting *Galabya*, 202 F.3d at 640). However, "a bruised ego," a "demotion without a change in pay, benefits, duties, or prestige," or "reassignment to [a] more inconvenient job" are all insufficient to constitute a tangible or material adverse employment action. *Burlington Indus. Inc. v. Ellerth*, 524 U.S. 742, 761 (1998).

The Court agrees that Plaintiff's retaliation claim fails to allege sufficient facts to support the inference that Defendants took an adverse action against her. First, while the Second Circuit has recognized that "unchecked retaliatory co-worker harassment, if sufficiently severe, may constitute adverse employment action" for purposes of a retaliation claim, *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 26–27 (2d Cir. 2014), as stated above, Plaintiff has failed to sufficiently allege the existence of a hostile work environment. Furthermore, being reprimanded or yelled at by a supervisor does not constitute an adverse action. *See Edwards*, 2012 WL 6101984, at *4. Additionally, Bifani's alleged failures to adequately referee Plaintiff's disputes with Campbell or to investigate Plaintiff's discrimination claims (Compl. at 7 ¶ 14, 24−25; Opp. at 1, 2) do not amount to an adverse action. *Paul*, 2015 WL 1508316, at *39; *Price v. Cushman & Wakefield, Inc.*, 808 F. Supp. 2d 670, 690 (S.D.N.Y. 2011); *Hayes v. Kerik*, 414 F. Supp. 2d 193, 203 (E.D.N.Y. 2006).

Moreover, Plaintiff's allegations that Campbell evaluated her negatively or inaccurately in 2012 do not rise to the level of adverse action. Plaintiff asserts that Campbell labeled Plaintiff as an "undue stressor" in her 2012 evaluation to "get back at [Plaintiff] for complaining about [Campbell's] abusive treatment" and to retaliate for Plaintiff having requested a travel

accommodation. (Opp. at 10, 11; *see* Tr. 4, 7−10.) "As a matter of law, an unsatisfactory performance evaluation alone does not amount to an adverse employment action because such evaluation does not constitute a material change in employment." *Davis v. N.Y.C. Dep't of Educ.*, 10 CV 3812, 2012 WL 139255, at *6 (E.D.N.Y. Jan. 18, 2012) (internal quotation marks omitted); *see Weeks v. N.Y. Div. of Parole*, 273 F.3d 76, 86 (2d Cir. 2001) ("It hardly needs saying that a criticism of an employee (which is part of training and necessary to allow employees to develop, improve, and avoid discipline) is not an adverse action."); *Krishnapillai v. Donahoe*, 09 CV 1022, 2013 WL 5423724, at *11 (E.D.N.Y. Sept. 26, 2013) ("Courts in this district have found that reprimands, threats of disciplinary action and excessive scrutiny do not constitute adverse employment actions" in the absence of other negative results such as a decrease in pay or being placed on probation); *Hong Yin*, 20 F. Supp. 3d at 373 (inaccurate evaluation was not an adverse action); *Browne v. City Univ. of New York*, 419 F. Supp. 2d 315, 332 (E.D.N.Y. 2005) ("A negative evaluation alone, absent some accompanying adverse result such as demotion, diminution of wages, or other tangible loss, does not constitute an adverse employment action.") Here, Plaintiff cannot allege any material detriment or other negative consequence to her employment caused by the 2012 negative evaluation. Plaintiff continues to be employed in the same position with QCC, and acknowledges that there were no promotions available in 2012. Because Plaintiff has not alleged any facts that could plausibly amount to an adverse action, Plaintiff's ADA retaliation claims are dismissed.

### VII. Equal Pay Act Claim

To state a claim for a violation of the EPA, a plaintiff must plausibly plead that: "'i) the employer pays different wages to employees of the opposite sex; ii) the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and iii) the jobs are performed

under similar working conditions.'" *Belfi v. Prendergast*, 191 F.3d 129, 135 (2d Cir. 1999) (quoting *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1310 (2d Cir. 1995)). A plaintiff need not prove discriminatory intent to prevail on an EPA claim. *Chepak v. N.Y.C. Health & Hosps, Corp.*, 11 CV 9698, 2015 WL 509279, at *8 (S.D.N.Y. Feb. 5, 2015).

"Bald allegations that male employees were paid more than female employees . . . will not survive a motion to dismiss[.]" *See, e.g.*, *Suzuki v. State Univ. of New York Coll. at Old Westbury*, 08 CV 4569, 2013 WL 2898135, at *4 (E.D.N.Y. June 13, 2013). While a plaintiff need not allege that her job was "identical" to a higher-paid position, "the standard is nonetheless demanding" and requires "that the jobs compared are 'substantially equal." *See E.E.O.C. v. Port Auth. of New York & New Jersey*, 768 F.3d 247, 255 (2d Cir. 2014) (citation omitted). Jobs that are merely "comparable" are insufficient. *Tomka*, 66 F.3d at 1310; *see also Francoeur v. Corroon & Black Co.*, 552 F. Supp. 403, 407 (S.D.N.Y. 1982) ("[P]laintiff cannot show merely that two jobs are comparable and that the wage differential between them is unjustified by the comparable worth of each job to the employer.") (citing *Hodgson v. Corning Glass Works*, 474 F.2d 226, 231 (2d Cir. 1973)). Application of the EPA hinges on actual job content rather than the employer's job descriptions, although job descriptions are often evidence of job content. *Chepak*, 2015 WL 509279, at *8.

Plaintiff's EPA claim fails because she has not alleged that she holds a substantially equal job for which she was paid less than males filling that role. Plaintiff holds a CUNY Office Assistant Level 3 title, but compares her salary to that of three males who held a different job title of "Bursar Coordinator" with different responsibilities, and who differed in their qualifications. Plaintiff asserts that despite a "75% overlap in work assignments," which includes billing, collection, counseling students, and adjusting accounts, male Bursar

Coordinators were paid approximately $20,000 more annually than Plaintiff. (*See* Compl. at 7 ¶ 15; Tr. 22−23.) Yet the law is clear that jobs that are merely "comparable" do not state a claim of unequal pay. *Tomka*, 66 F.3d at 1310; *Chepak*, 2015 WL 509279, at *12. Plaintiff concedes that she was not granted the same security access as Bursar Coordinators. (Tr. 21.) Bursar Coordinators had access to the office vault, a fact that suggests that the two positions were not substantially equal in responsibility and accountability. *See* 29 C.F.R. § 1620.17 ("Responsibility is concerned with the degree of accountability required in the performance of the job, with emphasis on the importance of the job obligation."); *Chepak*, 2015 WL 509279, at *11 (noting that inquiry does not end with comparison of substantive duties, as "[i]t is not uncommon that two employees perform certain tasks together but only one is held accountable for the results"). The facts also suggest that there is a differential in skill required for the two jobs: whereas Plaintiff was pursuing her college degree, all three Bursar Coordinators already had at least a college degree. One Bursar Coordinator also had a master's degree, and another was also pursuing a master's. (Tr. 23−24.) Indeed, Plaintiff noted that one Bursar Coordinator had been "*promoted*" from an Office Assistant Title. (Tr. 23.) As Plaintiff has not alleged sufficient facts to suggest that the work she performed as an Office Assistant Level 3 was substantially equal to the work performed by male employees who were paid more, Defendants' motion to dismiss her EPA claim is granted on that basis.

## VIII. Leave to Replead

The Second Circuit has stated that "[w]hen a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." *Hayden v. Cnty. of Nassau*, 180 F.3d 42, 53 (2d Cir.1999); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). However, a district court has the discretion to deny leave to amend

where there is no indication from a "liberal reading of the complaint . . . that a valid claim might be stated." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (quoting *Branum v. Clark,* 927 F.2d 698, 705 (2d Cir. 1991)). Though Plaintiff has already been permitted the opportunity to amplify her pleadings through the court conference and her opposition, out of an abundance of caution, the Court exercises its discretion to allow Plaintiff to seek leave to amend the Complaint *solely* with respect to her hostile work environment against QCC, which has been dismissed based on the lack of specificity and sufficiency of the factual allegations in the Complaint with respect to the allegedly harassing and unprofessional comments and conduct of Plaintiff's supervisors and/or co-workers. Should Plaintiff choose to seek leave to amend, she shall file her request with a proposed Amended Complaint, which contains only the hostile work environment claim against QCC, supported by additional and more specific factual allegations, no later than forty-five (45) days from the date of this Order. QCC will be permitted thirty (30) days after the filing of Plaintiff's motion to oppose it.

## *CONCLUSION*

For the foregoing reasons, the motion to dismiss Plaintiff's Complaint is granted for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), except that Plaintiff may seek leave to amend her hostile work environment claim against QCC within forty-five (45) days of this Order.

SO ORDERED:

/s/ Pamela K. Chen
PAMELA K. CHEN
United States District Judge

Dated: September 24, 2015
Brooklyn, New York

20